IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLINTON D. BIGGERS, et al.,      §
                                 §
              Plaintiffs,        §
                                 §  Civil Action No. 3:10-CV-1182-D
VS.                              §
                                 §
BAC HOME LOANS SERVICING, LP     §
f/k/a COUNTRYWIDE HOME LOANS     §
SERVICING, LP,                   §
                                 §
              Defendant.         §

MEMORANDUM OPINION
AND ORDER

This is a removed action by plaintiffs Clinton D. Biggers and Freda Hobson Biggers against defendant BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP ("BAC") arising from actions taken to foreclose on the Biggers' residential property. The Biggers bring common law claims for breach of contract, wrongful foreclosure, and negligent misrepresentation, and statutory claims under the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006), and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.826 (West 2002 & Supp. 2010). BAC filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the Biggers' state-court petition, which the court granted with leave to replead. After the Biggers filed a first amended complaint ("amended complaint"), BAC filed the instant Rule 12(b)(6) motion to dismiss. As with BAC's first motion, the Biggers have not responded. For the reasons that follow, the court grants BAC's

motion as to all claims except the Biggers' action under the TDCPA. The court grants the Biggers leave to replead their DTPA claim because it is dismissing the claim on a ground that BAC has not raised. The court otherwise denies leave to replead.

I

In 2008 the Biggers executed a note in the principal sum of $145,500 and a deed of trust securing the purchase of their residential property.[1] The deed of trust named Megastar Financial Corporation as the lender. The deed of trust/mortgage was assigned to BAC on May 18, 2010. BAC began taking actions to recover from the Biggers before the date the assignment of the deed of trust was formalized. BAC represented to the Biggers that it had purchased the loan by April 3, 2009. BAC also executed appointments of substitute trustee for the deed of trust on April 12, 2010 while purporting to be the mortgagee. On or about that same day, the substitute trustees issued notices of sale as to the loan and property.

Based on this conduct, the Biggers sue BAC for breach of contract, wrongful foreclosure, negligent misrepresentation, and violations of the TDCPA and DTPA. They allege that BAC's attempt

_____

[1]In deciding this Rule 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

to enforce the lien and seek a foreclosure constitutes a breach of contract because BAC knew or should have known that the actions of the substitute trustees were without capacity and void. The Biggers also aver that such an attempt at foreclosure, if allowed, would be a "wrongful foreclosure" because it would permit BAC to perpetuate its "deceptive and invalid conduct." Am. Compl. ¶ 15. They assert that BAC's misrepresentations of the ownership of the loan, threats of enforcement, and failure to give notice of default and opportunity to cure violate the TDCPA and DTPA. The Biggers bring an alternative claim for negligent misrepresentation, alleging that BAC did not exercise reasonable care in accurately communicating its legal capacity, and the actions it was taking, to enforce the lien.

II

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555

- 3 -

("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleadings standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).[2]

### III

The court first considers BAC's motion to dismiss the Biggers' breach of contract claim.

The Biggers allege that BAC breached the deed of trust by attempting to enforce the lien and seeking foreclosure when it knew or should have known that the actions of any substitute trustee

---

[2]The court evaluates the TDCPA claim under the Rule 8 standard rather than under the Rule 9(b) standard that applies to a fraud claim.  *See, e.g.*, *Prophet v. Myers*, 645 F.Supp.2d 614, 617 (S.D. Tex. 2008) (noting that claims under the federal equivalent of the TDCPA are evaluated under Rule 8 and that TDCPA claims should be as well).

were without capacity and void.  They allege that BAC represented that it had purchased the loan and had attempted to appoint substitute trustees before the assignment had been finalized.  The Biggers also assert that the notices issued by the substitute trustees were invalid.  They allege that BAC violated ¶ 18 of the deed of trust, which governs "Foreclosure Procedure," but they fail to specify which particular obligations were breached.

Paragraph 18 generally provides the following regarding the lender and the trustee's ability to initiate foreclosure:

> If Lender requires immediate payment in full . . . Lender may invoke the power of sale and any other remedies permitted by applicable law . . . .  If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law.  Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law . . . .  Borrower authorizes Trustee to sell the Property to the highest bidder[.]

D. Br. Ex. B at 5.[3]  The Biggers appear to allege that BAC was not

---

[3]The court is citing the record in this manner because BAC did not comply with N.D. Tex. Civ. R. 7.1(i)(1) and 7.2(e) in briefing this motion.  Rule 7.1(i)(1) provides that "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix."  Rule 7.2(e) states that "[i]f a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion."

authorized under the deed of trust to seek foreclosure because it had not formally succeeded as assignee when it invoked the power of sale or directed its newly-appointed substitute trustees to issue notice of foreclosure. This cause of action is not plausibly pleaded because it is internally inconsistent.

If BAC was not then an assignee of the original lender and was "without capacity," as the Biggers allege, then it follows that BAC cannot be considered a party to the contract (i.e., the deed of trust) that the Biggers allege BAC breached. Whatever wrong BAC may have committed in prematurely asserting rights it might not have yet possessed, it cannot have breached a contract to which it was not then a party. Alternatively, if BAC was an assignee at the time, then it was contractually entitled to invoke the power of sale, appoint trustees, and issue notices in anticipation of foreclosure.[4] Under either alternative, the Biggers have failed to plead a plausible breach of contract claim.

Plaintiffs fail to present a plausible legal theory. Accordingly, BAC's motion to dismiss is granted with respect to the Biggers' claim for breach of contract.

---

[4]Paragraph 12 of the deed of trust provides: "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to [provisions not applicable to this case]." D. Br. Ex. B. at 4.
Paragraph 20 of the deed of trust provides: "Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder." *Id.* at 6.

The court turns next to the Biggers' claim for wrongful foreclosure.

This cause of action is based on the allegation that "if [BAC] is allowed to proceed to foreclose on Plaintiff's Property as [BAC] has sought, such foreclosure would be wrongful, and would permit [BAC] to perpetuate a course of wrongful conduct that began many months ago in the deceptive and invalid conduct of [BAC]." Am. Compl. ¶ 15. The Biggers list the alleged wrongs that underlie this claim as noncompliance with contract, noncompliance with statutory requirements, and wrongs under the common law. Even assuming *arguendo* that the Biggers have otherwise pleaded a plausible ground for alleging such wrongs, this cause of action is not plausibly pleaded.

In Texas, the elements of a wrongful foreclosure claim are "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. 2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. 1989, writ denied)); *see also Sotelo v. Interstate Fin. Corp.*, 224 S.W.3d 517, 523 (Tex. App. 2007, no pet.) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price." (citing

*Frestier v. San Antonio Sav. Ass'n*, 564 S.W.2d 160, 165 (Tex. App. 1978, writ ref'd n.r.e.)). A claim for "wrongful foreclosure" is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect. Texas courts have yet to recognize a claim for "attempted wrongful foreclosure." *See Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. Civ. App. 1977, no writ); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App. 1998, no pet.) ("[T]he mortgagor is only entitled to [recovery for the difference between the foreclosure value and the remaining balance on the debt] if (1) title to the property has passed to a third party; or (2) the property has been appropriated to the use and benefit of the mortgagee."); *see also Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986) ("In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness.").

Because under Texas law an inadequate selling price is a necessary element of a wrongful foreclosure action, a foreclosure sale is a precondition to recovery. The Biggers only allege that BAC undertook wrongful conduct in preparation for foreclosure, but not that the foreclosure sale actually occurred[5] or that the price

---

[5]If the court were permitted to look beyond the content of the amended complaint, it would be reasonable to assume that no sale has taken place given that the amended complaint requests that the

that was paid was inadequate. The Biggers have therefore failed to plead a plausible claim for wrongful foreclosure. *See, e.g.*, *Smith v. J.P. Morgan Chase Bank N/A*, 2010 WL 4622209, at *2-3 (S.D. Tex. Nov. 4, 2010) (dismissing wrongful foreclosure claim under Rule 12(b)(6) where no foreclosure sale occurred, because of failure to state claim recognized under state law); *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *4 (N.D. Tex. June 24, 2009) (Boyle, J.) (granting summary judgment because plaintiffs never lost possession of homestead, even though lender commenced foreclosure proceedings).

V

The court addresses next the Biggers' claims under the TDCPA and DTPA.

A

The viability of the Biggers' DTPA claim pivots on the success of their TDCPA claim because the Biggers rely on the alleged TDCPA violation as the sole basis for their DTPA cause of action. *See* Am. Compl. ¶ 23; Tex. Fin. Code Ann. § 392.404(a) (West 2006) ("A violation of this chapter [codifying the TDCPA] is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [codifying the DTPA], and is actionable under that subchapter."). The court therefore turns first to the TDCPA claim.

---

court enjoin foreclosure, and neither party has indicated that the sale has already taken place.

Under Tex. Fin. Code Ann. § 392.403(a) (West 2006), "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter."  The Biggers base their TDCPA claim on the allegation that BAC violated Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006), which provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:   . . . threatening to take an action prohibited by law."  The Biggers allege that BAC threatened to enforce its claimed lien under the deed of trust, an act that they aver BAC did not then have the capacity to do.  They also assert that BAC failed to give them notice of default and opportunity to cure, as required under Tex. Prop. Code Ann. §§ 51.002(d) and 51.0025(2) (West 2007 & Supp. 2010).  And they aver that BAC failed to give adequate notice of sale, as required under Tex. Prop. Code Ann. §§ 51.002(b) and 51.0025(2) (West 2007 & Supp. 2010).  BAC maintains that this claim must be dismissed because foreclosure is not a "debt collection" under the TDCPA.

The TDCPA defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  Tex. Fin. Code Ann. § 392.001(5) (West 2006).  A "consumer debt" is defined as "an obligation, or an alleged obligation, primarily for

personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* § 392.001(2). A "creditor" is "a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." *Id.* § 392.001(3). A "consumer" is "an individual who has a consumer debt." *Id.* § 392.001(1). Nothing in these definitions excludes from coverage under the TDCPA foreclosure on real property that secures a residential mortgage.

The Texas Supreme Court has not yet addressed whether the act of foreclosure is a "debt collection" under the TDCPA. Intermediate Texas appellate courts have decided cases involving foreclosure-related claims under the TDCPA without suggesting that foreclosures do not qualify as "debt collection." *See, e.g., Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 453 (Tex. App. 2002, no pet.) (without suggesting that TDCPA was inapplicable as a matter of law, holding that mortgagee was entitled to summary judgment dismissing TDCPA claim where mortgagor's affidavit contained no evidence about mortgagee's efforts to collect on debt other than the eventual foreclosure, concluding that "[n]othing in the affidavit suggest[ed] that [mortgagee] engaged in an unfair or prohibited debt collection practice," and noting that mortgagors conceded that mortgagee "was entitled to summary judgment on their claims under the federal act because [mortgagee] was not a debt

collector as defined by that act").[6]  And intermediate Texas courts

have held that acts related to foreclosing on real property can

violate the TDCPA.  *See Rey v. Acosta*, 860 S.W.2d 654, 659 (Tex.

App. 1993, no writ) ("Wrongful acceleration of a real estate note,

as occurred here, violates the Texas Debt Collection Practices Act

and the Deceptive Trade Practices Act as a matter of law." (citing

*Dixon v. Brooks*, 604 S.W.2d 330, 334 (Tex. Civ. App. 1980, writ

ref'd n.r.e.)).  The TDCPA itself seems to contemplate that it

applies in the foreclosure context.  For instance, Tex. Fin. Code

Ann. § 392.304(a) (West 2006) provides:

> Except as otherwise provided by this section,
> *in debt collection* or obtaining information
> concerning a consumer, a debt collector may
> not use a fraudulent, deceptive, or misleading
> representation that employs the following
> practices . . . . (4) failing to disclose
> clearly in any communication with the debtor

---

[6]There are several Texas cases involving foreclosure that raise the TDCPA claim as part of a host of claims, but the claims were either disposed of on other grounds or involved attempts to recover debt that occurred in conjunction with the foreclosure process. *See, e.g.*, *Waterfield Mortg. Co. v. Rodriguez*, 929 S.W.2d 641, 644-45 (Tex. App. 1996, no writ) (describing defendant's demand that plaintiff pay a certain portion of debt in order to avoid foreclosure); *Cain v. Bank United of Tex., FSB*, 1997 WL 428054, at *7-8 (Tex. App. July 31, 1997, pet. denied) (not designated for publication) (disposing of plaintiff's claim that defendant enforced lien by foreclosure in violation of TDCPA without reaching question whether foreclosures are covered under TDCPA).  *Mundaca Investment Corp. v. Espinoza*, 1996 WL 671267, at *3 (Tex. App. Nov. 20, 1996, writ denied) (per curiam) (not designated for publication), involved a foreclosure sale and an "unfair debt collection practices" claim, but that claim contained no mention of the TDCPA.  *Mundaca* does not address whether a foreclosure proceeding qualifies as a "debt collection" under the TDCPA.

> the name of the person to whom the debt has
> been assigned or is owed when making a demand
> for money.

*Id.* (emphasis added). But § 392.304(b) provides that "Subsection (a)(4) does not apply to a person *servicing or collecting real property first lien mortgage loans* or credit card debts." *Id.* (emphasis added). That the Texas Legislature exempted persons servicing or collecting real property first lien mortgage loans from § 392.304(a)(4), which only applies "in debt collection or obtaining information concerning a consumer," indicates that collecting real property first lien mortgage loans is a form of debt collection. And one way, of course, of collecting a real property first lien mortgage loan is through foreclosure. In fact, because under Texas law a notice of default and opportunity to cure must precede a foreclosure sale, *see* Tex. Prop. Code Ann. § 51.002(d) (West Supp. 2010), foreclosure actions inevitably involve a debt collection aspect. Therefore, it appears that the TDCPA applies to foreclosure actions.

BAC cites decisions from other jurisdictions that, in interpreting the federal Fair Debt Collection Practices Act ("FDCPA") and analogous state debt collection statutes, define "debt collection" to exclude actions purely aimed at foreclosure. *See, e.g.*, *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204, 1206 (D. Ore. 2002); *Izenberg v. ETS Servs., LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008); *Heinemann v. Jim Walter Homes, Inc.*,

47 F.Supp.2d 716, 722 (N.D. W.Va. 1998). BAC acknowledges, however, that Texas courts have not squarely decided whether foreclosure qualifies as "debt collection" under the TDCPA. The laws of other states do not control in Texas, and federal decisions can be distinguished on the ground that the TDCPA contains different definitions for the terms "debt collector" and "debt" than are found in the FDCPA, and the FDCPA does not define the term "debt collection," whereas the TDCPA does. *Compare* 15 U.S.C. § 1692a(5)-(6) (defining "debt" and "debt collector") *with* Tex. Fin. Code Ann. § 392.001(2), (5), (6) (West 2006) (defining "consumer debt," "debt collection," and "debt collector"). In a diversity case where "no state court decisions control, [the court] must make an '*Erie* guess' as to how the Texas Supreme Court would apply state law." *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 794 (5th Cir. 2010) (citing *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)). Based on the statutory definitions and the status of Texas case law, the court makes an *Erie*-guess that the TDCPA can apply to actions taken in foreclosing on real property.

B

Having concluded that the TDCPA applies to BAC's actions, the court holds that the Biggers have pleaded sufficient additional facts in their amended complaint to state a plausible claim under the TDCPA. First, taking the factual allegations of the amended

complaint as true, BAC's substitute trustees issued notices of sale on or about April 12, 2010 without giving an earlier notice of default and opportunity to cure. *See* Am. Compl. ¶¶ 11, 18. Tex. Prop. Code Ann. §§ 51.002(d) requires that BAC provide written notice of default under the deed of trust and afford the Biggers 20 days to cure the default before issuing a notice of sale. If, as alleged, BAC failed to follow this procedure, a foreclosure would violate Texas law, and a threat of foreclosure made during debt collection attempts would violate Tex. Fin. Code Ann. § 392.301(a)(8) by threatening to take an action prohibited by law. Unlike the Biggers' state-court petition, their amended complaint identifies who gave the deficient notice, the type of notices involved, and the nature of the defect in the notices. With these factual elaborations and explanations, their TDCPA claim is now plausible, at least with respect to the part of the claim based on Tex. Prop. Code Ann. § 51.002(d).

The Biggers also allege that BAC violated the TDCPA by threatening to enforce the deed of trust lien without having the capacity to do so. In their state-court petition, the Biggers only alleged the following: that BAC represented to them that, as early as April 3, 2009, it purchased the loan associated with their deed of trust; that BAC represented itself to be their mortgagee and servicer; and that there appeared to be no record of assignment to BAC from the previous mortgagee. The court held that these factual

allegations were insufficient to demonstrate a plausible claim because it would be unreasonable to infer from the absence of public record alone that the assignment necessarily did not occur. The Biggers' amended complaint now alleges, however, that an assignment of the deed of trust *was* made, but that it was executed and recorded on May 18, 2010. If BAC and its purported substitute trustees threatened to foreclose at a time when BAC did not have the legal right to demand foreclosure, it would have threatened to do an action prohibited by law. Therefore, the court holds that the amended complaint states a plausible claim under Tex. Fin. Code Ann. § 392.301(a)(8) on this basis as well.

The Biggers also allege that any notices of sale given by BAC were deficient and in violation of Tex. Prop. Code Ann. § 51.002(b). The court dismisses this ground of their claim because § 51.002(b) only requires notice of sale that complies with its requirements at least 21 days before the date of sale, and the Biggers do not allege a date of sale or that a foreclosure sale even occurred. Therefore, regardless whether the substitute trustees had the capacity to issue the notices of sale alleged in the amended complaint, there cannot be a violation of § 51.002(b).

Accordingly, BAC's motion to dismiss the Biggers' TDCPA claim is granted in part and denied in part.

Because the Biggers have pleaded a plausible claim under the TDCPA, the court now decides whether they have pleaded a plausible claim under the DTPA.

Under Tex. Fin. Code Ann. § 392.404(a), "[a] violation of [the TDCPA] is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [i.e., the DTPA], and is actionable under that subchapter." But to plead a DTPA plausible claim, it is not enough to allege that a defendant committed a "deceptive trade practice." Under the DTPA, "a consumer may maintain an action where any of the following [i.e., a list including 'deceptive act or practice'] constitute a producing cause of economic damages or damages for mental anguish." Tex. Bus. & Com. Code Ann. § 17.50 (West 2010). Therefore, the Biggers must plead sufficient facts to establish their standing to bring suit as "consumers" and that BAC's deceptive practices were a producing cause of economic damages or mental anguish damages.

Assuming *arguendo* that the Biggers have alleged sufficient facts to demonstrate that they are consumers under the DTPA, they must still allege sufficient facts to establish that they suffered a type of injury for which the DTPA provides a remedy, i.e., "economic damages or damages for mental anguish"), and a causal link between the deceptive practice and the injury. But the

Biggers have done neither.[7]  They request statutory damages, injunctive relief, actual damages, and exemplary damages, but they do not plead facts that, taken as true, make a plausible showing that they have been injured.  At best, in a section of the amended complaint that addresses a different claim——negligent misrepresentation——they allege that they "justifiably relied on [BAC's] misrepresentations [about its ownership of the loan], to their detriment in the jeopardy of their continued use and enjoyment of [their] homestead Property[.]" Am. Compl. ¶ 31.  This conclusory assertion does not plausibly establish that their belief in the changed ownership of the loan had any effect on the jeopardy of the home.  And, in any case, "jeopardy" of itself is not shown to be an economic loss.  Therefore, BAC is entitled to dismissal of the Biggers' claim under the DTPA.

_____

[7]Although BAC has not sought dismissal on this basis, a federal district court has the authority to consider the sufficiency of a complaint and "dismiss an action on its own motion 'as long as the procedure employed is fair.'"  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1988) (per curiam)); *see also Coates v. Heartland Wireless Commnc'ns, Inc.*, 55 F.Supp.2d 628, 633 (N.D. Tex. 1999) (Fitzwater, J.); *Foreman v. Dallas County, Tex.*, 990 F. Supp. 505, 510 (N.D. Tex. 1998) (Fitzwater, J.) (three-judge court); 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 409 (3d ed. 2004) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").  Because the court is granting the Biggers leave to amend their DTPA claim in an effort to correct this pleading defect, the procedure employed here is fair.

The court addresses next the Biggers' claim for negligent misrepresentation.

The Biggers allege that BAC negligently misrepresented its legal capacity to enforce the deed of trust lien and that they relied on these misrepresentations to their detriment. BAC moves to dismiss this cause of action, contending, *inter alia*, that the amended complaint is too vague to support this claim.[8]

The court agrees with BAC that the amended complaint does not allege sufficient facts to establish a plausible claim. In Texas, the elements of negligent misrepresentation are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (agreeing with definition in Restatement (Second) of Torts § 552B (1977)). The Biggers generally allege that BAC misrepresented whether it owned or serviced their loan and had the legal capacity to threaten to enforce or enforce the deed of trust lien. Am.

---

[8]BAC also maintains that it did not owe a duty of good faith and fair dealing to the Biggers because there is no special relationship between a mortgagor and a mortgagee. The court need not reach this ground of BAC's motion.

Compl. ¶¶ 28, 30. Even if the court assumes *arguendo* that BAC made false representations, this claim fails because the Biggers have failed to plead sufficient facts to show that they relied on these representations to their detriment. The Biggers do not make allegations of pecuniary loss but merely assert that the continued use and enjoyment of their property was jeopardized as a result of their reliance. *Id.* at ¶ 31. The amended complaint does not contain a plausible explanation of how their beliefs regarding the *identity* of the loan owner and servicer had any effect on their circumstances. For example, the Biggers do not allege that they opted not to make loan payments and subjected themselves to potential foreclosure *because* they believed that BAC owned the loan and had legal capacity to enforce the deed of trust lien. They do not allege that they would have done anything differently to alleviate their residential property from jeopardy had they known that BAC was not yet the owner of the loan. Furthermore, absent a plausible claim that the foreclosure sale occurred, the amended complaint is devoid of allegations of any other alleged harms that could be construed as assertions of pecuniary loss. The mere fact that their property was put in "jeopardy" by threats does not of itself make a plausible showing of pecuniary loss.

Accordingly, the court grants BAC's motion to dismiss the Biggers' negligent misrepresentation claim.

VIII

The Biggers also sue for exemplary damages. "Exemplary damages are authorized under the Texas Civil Practice and Remedy Code when the claimant proves by clear and convincing evidence that the harm [with respect to which the claimant seeks recovery] results from fraud, malice or gross negligence." *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 373 (Tex. 2004) (per curiam) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)). Because the Biggers have failed to plead an underlying claim that makes a plausible showing that BAC acted fraudulently or with gross negligence, they cannot recover exemplary damages, and their request for this remedy is dismissed.

*        *        *

For the reasons explained, the court grants BAC's motion to dismiss as to all of the Biggers' claims except their cause of action under the TDCPA. Because the court has twice granted Rule 12(b)(6) motions to dismiss and the Biggers have twice failed to respond to BAC's motions, the court will not permit them to replead except as to their DTPA claim, which the court has dismissed on a ground raised *sua sponte*. The Biggers may file a second amended complaint within 21 days of the date this memorandum opinion and order is filed. In granting this relief, the court notes that BAC filed a summary judgment motion on February 1, 2011. In granting the Biggers leave to amend, the court does not suggest that they

can expand their DTPA claim in a manner that precludes BAC from obtaining summary judgment dismissing this claim, assuming it is entitled to this relief. *See, e.g., Siddiqui v. AutoZone West, Inc.*, 731 F.Supp.2d 639, 644-45 (N.D. Tex. 2010) (Fitzwater, C.J.) ("A party is not entitled to defeat summary judgment based on claims that have not been asserted as of the time the opposing party has filed a summary judgment motion.").

**SO ORDERED.**

February 10, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE